Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

| | |
|---|---|
| Babanina James <br><br> *Plaintiff(s)* <br> *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* <br> -v- <br> Massachusetts Department of Public Health et al <br><br> *Defendant(s)* <br> *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Case No. 1:24-cv-11526-LTS <br> *(to be filled in by the Clerk's Office)* <br><br> Jury Trial: *(check one)* ✔ Yes ☐ No |

## COMPLAINT FOR A CIVIL CASE

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Babanina James |
| Street Address | 95 University # 2125 |
| City and County | Westwood , Norfolk County |
| State and Zip Code | Massachusetts 02090 |
| Telephone Number | 857-891-0301 |
| E-mail Address | Ninaj1542@gmail.com |

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Massachusetts Department of Public Health |
| Job or Title *(if known)* | |
| Street Address | 250 Washington Street |
| City and County | Boston, Suffolk County |
| State and Zip Code | Massachusetts, 02108 |
| Telephone Number | 617-624-5231 |
| E-mail Address *(if known)* | david.markowitz@state.ma.us |

Defendant No. 2

| | |
|---|---|
| Name | Elizabeth Barry |
| Job or Title *(if known)* | Asst. Deputy Director of Bureau of Community Health & Prevention |
| Street Address | 250 Washington Street |
| City and County | Boston, Suffolk County |
| State and Zip Code | Massachusetts, 02108 |
| Telephone Number | 617-877-7882 |
| E-mail Address *(if known)* | elizabeth.barry@state.ma.us |

Defendant No. 3

| | |
|---|---|
| Name | Lea Susan Ojamaa |
| Job or Title *(if known)* | Asst. Deputy Director of Bureau of Community Health & Prevention |
| Street Address | 250 Washington Street |
| City and County | Boston, Suffolk County |
| State and Zip Code | Massachusetts, 02108 |
| Telephone Number | 617-994-9843 / 617-624-5075 |
| E-mail Address *(if known)* | lea.ojamaa@state.ma.us |

Defendant No. 4

| | |
|---|---|
| Name | Yves Singletary/ Lindsey Tucker |
| Job or Title *(if known)* | Director of Violence Prevention Division/ Asst. Commissioner |
| Street Address | 250 Washington Street |
| City and County | Boston, Suffolk County |
| State and Zip Code | Massachusetts, 02108 |
| Telephone Number | 617-624-5231 |
| E-mail Address *(if known)* | |

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[✔] Federal question          [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.
Title VII of the Civil Rights Act of 1964 - 42 U.S.C. § 2000e et seq. Title VII of the Civil Rights Act of 1866, 42 U.S.C.§ 1981; and Title VII, 42 U.S.C. 2000e, Civil Rights Act of 1991, Equal Pay Act of 1963 (EPA) - 29 U.S.C. § 206(d), Equal Pay Act As Amended (EPA); Title I of the American's with Disabilities Act (ADA), American with Disabilities Act Amended 2008; American with Disabilities Act Amended 2009, Americans with Disabilities Act (ADA) - 42 U.S.C. § 12101 et seq. Whistleblower Protection Act (WPA),Fair Labor Standards Act (FLSA) - 29 U.S.C. § 201 et seq. and the Fair Equity Act.

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

    a. If the plaintiff is an individual

    The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

    b. If the plaintiff is a corporation

    The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

    a. If the defendant is an individual

    The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

Pro Se 1 (Rev. 09/16) Complaint for a Civil Case

    b.    If the defendant is a corporation

        The defendant, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)* _____ .

        Or is incorporated under the laws of *(foreign nation)* _____ , and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

    3.    The Amount in Controversy

The amount in controversy-the amount the plaintiff claims the defendant owes or the amount at stake-is more than $75,000, not counting interest and costs of court, because *(explain)*:

---

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

This case involves allegations by Plaintiff Babanina James that the Massachusetts Department of Public Health violated federal and state laws, including Title VII of the Civil Rights Act, ADA, EPA, FLSA, FEA and WPA-(the Whistleblower Protection Act), by engaging in a pattern of racial, gender, and disability discrimination, retaliation, and harassment from 2016 to 2019. These actions, including unequal pay, denial of reasonable accommodations, obstruction of job duties, wrongful termination, and defamation, resulted in significant professional, personal, emotional, and financial harm, exacerbating the plaintiff's health issues. Please see Attachment A for CLAIMS 1-6 including expanded details and acts (found on Page 6 through 11 of this document).

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Babanina James seeks compensation for financial damages totaling $8,000,900.00 due to acts of discrimination by the the MDPH spanning 3 years from July 29, 2016 through July 29, 2019 and beyond. wrongful termination on July 29th, 2019. These damages encompass various aspects, including the loss of salary, denial of three years of managerial salary increases, inequitable pay disparities, litigation cost, attorney fees, pain and suffering, trauma-induced long-term disability impacting her ability to work, and forced withdrawal of retirement funds. Punitive damages, compensation for future medical expenses, living expenses, housing costs, and inflation over the next 50 years are requested to address the ongoing impact on her mental health/trauma and financial.

Please see Attachment B RELIEF for expanded details. (Page 12 and 13 of this document)

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 12/26/2024

Signature of Plaintiff

Printed Name of Plaintiff  Babanina James

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

# ATTACHMENT A. (Civil Complaint)

### <u>Babanina James (Plaintiff) v. Massachusetts Department Public Health et al (Defendant)</u>
### Civil Action No. 1:24-cv-11526-LTS

**Attachment A Claims 1-6** (Reference Question: III Statement of Claim on Page 4 of Civil Complaint):

**Statement of Claim:** This case involves allegations by Plaintiff Babanina James that the Massachusetts Department of Public Health violated federal and state laws, including Title VII of the Civil Rights Act, ADA, EPA, FLSA, FEA and WPA-(the Whistleblower Protection Act), by engaging in a pattern of racial, gender, and disability discrimination, retaliation, and harassment from August of 2016 to July of 2019. These actions, including unequal pay, denial of reasonable accommodations, obstruction of job duties, wrongful termination, and defamation, resulted in significant professional, personal, emotional, and financial harm, exacerbating the plaintiff's health issues. Please see <u>**Attachment A for CLAIMS 1-6** including expanded **details and acts**</u> (found on Pages 6 -11of this document).

**THERE ARE A TOTAL OF SIX CLAIMS AGAINST MDPH**

## (1) <u>CLAIM Number One:</u>

The Massachusetts Department of Public Health (MDPH) Discriminated Against Babanina James Based on Race, Sex, and Retaliation When They Terminated Her Employment on July 29, 2019. MDPH engaged in discriminatory practices against the plaintiff based on her race and sex. These actions included unequal treatment in the workplace, denial of opportunities afforded to similarly situated employees, and retaliatory actions following complaints of discrimination.

    A. False Allegations and Unlawful Termination - MDPH made false allegations against Babanina James and terminated her employment without valid cause, damaging her professional reputation and career prospects. This termination was a direct result of discriminatory actions based on race, sex, and retaliation.

    B. Denial of Resources Despite High Budget Management - From 2017 to July 2019, despite managing the highest budget line item within the Division of Violence Prevention (DVIP), Babanina was denied additional DPH employees, which significantly affected the unit's capacity to implement and achieve its stated objectives. This denial of resources hindered the success of the unit and reflects discriminatory practices that disproportionately impacted Babanina's ability to succeed.

    C. Violation of Job Description and Human Resources Division Management Questionnaire / Qualifications Form (MQ) - MDPH violated Babanina's job description and MQ, which entitle her to oversee the Child and Youth Violence Prevention Unit, hire staff, allocate programmatic and financial resources within the CYVP budgets, and determine the program budget and resource budgets and contracts within the unit and supervise staff and consultants. Instead, MDPH reduced my authority to that of a wage employee, stripping me of the responsibilities and authority designated in my role as a supervisor.

    D. Refusal to Allocate Personnel Resources for CYVP - Elizabeth Barry, while serving as BCHAP Director of Administration and Finance, refused to allocate personnel resources for the Child and Youth Violence Prevention (CYVP) Unit when two white unit staff members resigned from their positions as a PCIII and program consultant. This refusal to not fill previously approved staffing line items for the two positions constituted a violation of MQ to provide adequate staffing for unit operation and the decision undermined the unit's ability to function effectively and meet its goals and objectives.

E. Discriminatory Allocation of Staff Support - Babanina experienced discrimination when white unit managing directors within the DVIP received more staff support, (including designated epidemiologist and higher grade level staff positions such as PCII's and PCIII's) indicating resource disparities. Lea Susan Ojamaa, supervising and appraising manager allowed PCIII CYVP unit position an internal transfer to another unit during the busiest season of the year and did not advocate replacing the position. The new position was created for Steven Smyth and I was denied resources to hire a replacement by Elizabeth Barry for the designated line item thus leaving his work incomplete and redistributed to the of CYVP Unit Director and PC II CYVP staff member. This unequal distribution of equitable resources demonstrates the department's preferential treatment of certain staff based on race and reflects a broader pattern of discriminatory practices.

F. Delay in Hiring and Upgrading Staff - From April 2019 to July 2019, Elizabeth Barry delayed hiring and upgrading CYVP staff, as well as other qualified, fully vetted and nominated internal African American candidates, for the CYVP unit. Eligible and available candidates were not confirmed for positions, further hindering the unit's ability to meet its objectives and perpetuating discriminatory hiring practices.

G. Wage Discrimination, Retaliation, and Disparate Treatment - Babanina experienced wage discrimination, retaliation, and disparate treatment based on race and gender when, for three years, she managed the highest budget in the DVIP with the least amount of staff. Despite her significant responsibilities, Babanina was paid less than a white male staff member she supervised—violating MDPH policy that managers should not be paid less than their staff. After multiple requests to address this pay disparity, Babanina was informed that she was due a raise based on a Desk Audit Report conducted that confirmed she was underpaid as compared to other managers. However, Babanina was terminated without warning or disciplinary meetings just two weeks before receiving my back pay, any retroactive managerial pay raise or equity pay adjustments, while my white female DVIP counterparts, hired after me, received their managerial raises and continued to be paid at a higher rate as authorized by Elizabeth Barry.

H. Unaddressed Pay Equity Requests - Throughout Babanina's three-year tenure, her requests for pay equity and fair pay were consistently ignored, despite her higher workloads and a 200% increase in Achievement and Competency Enhancement System (ACE) performance objectives and reports for FY 2019. This lack of action, despite Babanina's lower pay compared to white counterparts, further highlights the department's discriminatory practices.

I. Discriminatory Allocation of Position Funding and Reassignments - Babanina experienced discriminatory practices in the allocation of CYVP unit position funding and the reassignment of positions, which were deliberately intended to undermine my authority, weaken my leadership, and diminish my role as CYVP Unit Director within the organization. These actions were directly the result of Elizabeth Barry's discriminatory behavior and practices.

J. Termination Just Before Managerial Back-Raise - Babanina was terminated just two weeks before receiving a department-wide managerial back-raise, which was granted to all other managers, including those hired after me. Despite successfully completing all ACES performance objectives for FY17, FY18, and FY19, with diminished staff capacity, inadequate staff and minimal resources, Babanina was denied this pay raise, further demonstrating retaliation and discriminatory treatment.

K.  **Interference with Management and Supervision of Consultant Staff** - Babanina faced interference in her management and supervision of consultant staff, including micromanagement, dual management, and over-supervision, which created a hostile work environment. This interference undermined my ability to effectively manage my team and contributed to a toxic work environment.

L.  **Constructive Demotion and Breach of Job Duties** - Babanina experienced constructive demotion and breach of job duties as a result of Elizabeth Barry's consistent undermining of her supervisory role. Barry unilaterally allocated program budgets and obstructed staff efforts, violating Babanina's job description and the MQ Form (Human Resources Division Management Questionnaire), which outlines the CYVP Unit Directors, roles, responsibilities, and authority. These actions diminished Babanina's ability to perform my duties as hired and undermined my leadership within the CYVP unit incorporating both macro and micro aggressions.

M.  **Breach of Authority and Constructive Demotion** - As the Director of the CYVP Unit, Babanina was hired with the authority to manage essential duties such as hiring staff, allocating program budgets, and overseeing operations within the unit. However, Elizabeth Barry consistently undermined Babanina's role by breaching her job duties, including unilaterally allocating the program budget for the Gun Violence Prevention (GVP) program and consultants without Babanina's input. These actions obstructed Babanina's ability to hire or replace staff, effectively resulting in a constructive demotion. While retaining the title of Director, Babanina was denied the authority necessary to perform her responsibilities, further demonstrating retaliation and discrimination.

## (2) CLAIM Number Two:

**Failure to Provide Reasonable Accommodations** - the MDPH discriminated against me based on disability when they failed to provide approved reasonable accommodation from January 3, 2019 through July 29, 2019. The defendant failed to provide reasonable accommodations for the plaintiff's documented disabilities, despite repeated requests. This failure contributed to the deterioration of the plaintiff's health and ability to perform job duties effectively.

A.  On January 3, 2019, Lea Susan Ojamaa and Elizabeth Barry signed off on an alternative work schedule (4-day workweek) as a special accommodation, but Babanina was forced to work beyond the approved schedule due to lack of staff support and high demand.

B.  Despite approval for a 4-day workweek (37.5 hours), Babanina was forced to work 30-35 hours per week, overtime, weekends, and evenings to meet aggressive procurement timeline implemented by Babanina was approved to hire JSI Consultant team and implement Consultant Contract to address staff shortage for GVP project; however the contract was delayed six weeks due to Elizabeth Barry's refusal to sign the contract in objection to two African American Consultants assigned on the JSI team. Meanwhile, Elizabeth Barry, condensed a 16-month procurement process into 3 months, and added four additional Request For Quotations (RFQs).

C.  Failure to Provide Approved Accommodations: On February 26, 2019, Babanina James's reasonable accommodation request was approved by Naomi Carlisle, the Diversity Officer. However, the approved accommodations due to injury to risk to hand caused at work, were never provided prior to Babanina's unlawful termination on July 29, 2019.

D.  In June 2019, Yves Singletary denied Babanina James's reasonable accommodation request for travel, requiring her to find alternative transportation despite having a medical accommodation on file.

**(3) CLAIM Number Three:** the MDPH subjected me to discrimination based on sex when they paid subordinate male staff more money than they paid me from July 29, 2016 through July 29, 2019. Violated the Fair Pay Act and violation of DPH Internal Collision Policy:

A. April 2019: Elizabeth Barry and Lea Susan Ojamaa coordinated the internal transfer of subordinate staff and provided raises while denying Babanina James the financial resources to fund a new vacant position for the Child and Youth Violence Unit.

B. June 2018: Elizabeth Barry and Lea Susan Ojamaa refused to address the staff collision policy, resulting in Steve Smyth, a subordinate, receiving a higher rate of pay than his supervisor, Babanina James, thereby failing to implement the DPH Fair Equity Act.

C. December 2018: Elizabeth Barry and Lea Susan Ojamaa refused to implement the new fair equity law, thereby denying compensation increases to avoid staff collision.

D. March 2019: Eileen Sullivan, Chief Operations Officer, and Marilyn, HRD, confirmed two options for salary increases (desk audit and salary contribution request). Although a desk audit found Babanina James was paid substantially less than other managers, this method did not result in pay equity or fair pay, it was never approved, and as a result MDPH continued to violate MDPH Collision policy.

E. February 20, 2019: Elizabeth Barry and Lea Susan Ojamaa were informed about the option to increase pay and address staff collision through a salary contribution request. Despite recommendations, neither leadership staff nor Carlene Pavlos, past Bureau Chief, submitted the request to the Commissioner's office, failing to address the issue.

**(4) CLAIM Number Four:** MDPH discriminated against me when they paid white supervisors at the same level a higher rate of pay. My DVIP Managers- counterparts perform similar work, despite my qualifications and tenure constitutes pay inequity, and racial discrimination in pay. Furthermore I was denied access to universal managerial back wages. Violating Pay Equity Act and Fair Pay Act by providing unequal pay.

A. In 2017 and 2018, Elizabeth Barry, Director of Administration and Finance, authorized higher rates of pay to newly hired DVIP Unit Directors Kelly Cunningham and Rebeca Thomas, (both white supervisors), than Babanina James, despite her seniority and significant achievements.

B. Despite consistently receiving highly effective marks on Babanina's ACES Achievement and Competency Enhancement System Report for FY 2017, 2018 and 2019 managerial evaluations in which provides a comprehensive list of managerial objectives annually Performance Evaluations, which provides a detailed list of all met objectives by specified deadlines, Babanina James was denied pay adjustments.

C. Babanina's ACES objectives, was double that of her colleagues as a result of the aggressive GVP procurement and I was paid less, while having more seniority and less staff support for new and expanded ACES objectives.

D. Babanina experienced disparate treatment regarding universal managerial back-raises: Babanina faced disparate treatment when, despite being eligible for a department-wide universal back increase in managerial salaries, she was terminated just two weeks before receiving this increase. While all other managers, including those hired after Babanina, received their managerial raises, she was denied this benefit due to her abrupt termination. This action not only prevented her from receiving the increase but also reflected a broader pattern of discriminatory practices within the department.

**(5) CLAIM Number Five:** MDPH management initiated a retaliatory action against Babanina after she engaged in **whistleblower activities** (a **protected activity** under **Massachusetts General Laws Chapter 151B**). Babanina was terminated without just cause and as an act of reporting discriminative practices to Diversity Officer at MDPA which was incorporated into a formal complaint. I was wrongfully terminated as a result.

   A. March 20, 2019, Babanina James was retaliated against for meeting with the Diversity Officer (Naomi Carlisle) who on my behalf launched a formal complaint of discrimination, workplace harassment, and hostile work environment. The retaliation occurred through increased scrutiny, unfavorable treatment, and exclusion from key decisions or meetings.

   B. Discovery of Funding Discrepancies (2015 FYI Funding Year): As the Director of the CYVP Unit, Babanina James identified significant irregularities in the grant funding process. She discovered that grants were awarded to agencies that had not applied for the specific grant line item they received funding for. Furthermore, certain favored agencies were prioritized over others on the "fundable but not funded" list, revealing a consistent pattern of biased and unfair funding practices approved by the BCHAP leadership team.

   C. GVP Procurement and Funding Allocation: Babanina James was retaliated against for attempting to prevent biased and unfair procurement practices within the Gun Violence Prevention (GVP) funding allocation process. My attempts to advocate for transparency were met with exclusion from meetings, denial of my ability to represent the CYVP Unit, as a deliberate response to my whistleblower activity and my efforts to address inequities and improve the fairness of GVP procurement process. MDPH officials deliberately prevented Babanina from attending meetings where decisions affecting the CYVP Unit were made. Additionally, I was not allowed to participate in initiatives or provide input as the CYVP Director. This act created barriers to address professional responsibilities and activities. My role was undermined and my attendance at key events was replaced by newly hired, Deputy Director of Violence and Injury Yves Singletary and Rebecca Thomas and others.

   D. Defamation of Character: Following her termination from MDPH, Babanina James experienced defamation of character, as no corrective action plan or ACES evaluations were used to support her termination decision. Additionally, evidence of her achievements and positive contributions were suppressed, causing significant harm to her reputation. MDPH did not use standard performance evaluation procedures or corrective action processes to justify the termination, thereby violating her rights under Chapter 151B and potentially defaming her in the process. The failure to provide evidence of performance issues or a valid justification for termination, coupled with the suppression of her contributions, harmed her career and reputation.

   E. Undermining of Authority: Babanina James experienced retaliation in the form of her authority being systematically undermined within the CYVP Unit. As a direct consequence of her whistleblower activities, MDPH management took actions to undermine her authority and limit her effectiveness as a Director. This included: Publicly disregarding her leadership in meetings where she was expected to provide input or lead discussions. Deliberately excluding her from decision-making processes and failing to support her authority within the unit.

**(6) CLAIM Number Six:** MDPH subjected Babanina James to ongoing and continuous harassment based on race, sex, disability and retaliation from 2016 to July 29th 2019 creating a hostile work environment.

A. Discriminatory Objections to Hiring Consultants: Babanina James faced discriminatory objections when attempting to hire African American consultants, restricting the CYVP Unit's ability to benefit from diverse perspectives and expertise. The refusal to hire African American consultants undermined the inclusive goals of the unit and limited the diversity of input in important initiatives. These actions were a form of racial discrimination, violating both Chapter 151B and federal civil rights laws protecting individuals from discrimination in employment.

B. Delayed Budget Line-Item Approvals: Budget approvals for key positions and funding allocations within the CYVP Unit were consistently delayed, hindering the unit's operations and limiting its ability to effectively address critical issues. The delays in budget approvals created unnecessary roadblocks for the proper functioning of the unit, specifically impacting essential projects designed to address youth violence and safety. This denial of resources impacted the unit's ability to execute its mission, affecting the overall effectiveness of its programs and operations.

C. Denial of Consultant Contract Extensions: Elizabeth Barry delayed authorizing a contract extension with John Snow Inc. for six weeks and objected to the hiring of two African American consultants—Duiona Baker and Jay Blackwell—who were crucial for completing and posting GVP procurements. The deliberate delay in the approval of contracts and the objection to hiring qualified African American consultants exemplified discriminatory practices and created barriers to the timely and effective implementation of the Gun Violence Prevention (GVP) initiatives. This denial of necessary resources and personnel disrupted the operations and harmed the program's success.

D. Replacement of Administrative Assistant: In July 2017, MDPH caused undue delays in replacing the Administrative Assistant/subcontractor position after Bernie Gardella's resignation, directly affecting the unit's workflow. The delay in replacing this critical position resulted in significant operational disruptions for the CYVP Unit, reducing its capacity to complete essential tasks and manage critical projects. This delay was also a form of retaliation, given the context of Babanina James's previous whistleblower activities.

E. Interference in GVP Project Implementation: In 2018 and 2019, Elizabeth Barry, Lea Susan Ojamaa, and Yves Singletary engaged in interference, obstructionist activities, and micromanagement, hindering the smooth implementation of the GVP project. The concerted actions of these individuals not only interfered with the CYVP Unit's mission but also created a hostile and discriminatory environment. Their interference disrupted progress on key projects and harmed the unit's ability to meet objectives, as it denied Babanina the opportunity to lead and manage these initiatives effectively.

F. Unequal Access to Decision-Makers: Babanina James experienced unequal access to decision-makers and leadership, restricting her ability to influence important decisions and effectively fulfill her job responsibilities. By limiting Babanina's access to decision-makers, MDPH effectively hindered her ability to advocate for the CYVP Unit and represent her team's interests. This unequal treatment deprived her of the opportunities and authority necessary for her role and responsibilities as the Unit Director.

G. Exclusion and Micromanagement: Babanina James was excluded from important meetings and events, subjected to excessive micromanagement, and treated in a discriminatory manner compared to her white colleagues. These actions, which included exclusion from key meetings, over-supervision, and micromanagement, were discriminatory in nature. Babanina faced harsher scrutiny and more rigid control over her work than her colleagues, reflecting both racial and gender-based discrimination. This treatment was designed to undermine her authority and ability to lead effectively.

# ATTACHMENT B. RELIEF (Civil Complaint)

*Babanina James (Plaintiff) v. Massachusetts Department Public Health et al (Defendant)*
Civil Action No. 1:24-cv-11526-LTS

**IV. Relief Continued (Supplemental attachment to pages 12 and 13 of the Civil Complaint)**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

**Response:**

Babanina James seeks financial compensation damages totaling $8,000,900 dolls due to claims of discrimination against the Massachusetts Department of Public Health spanning from 2016 through wrongful termination on July 29, 2019. These damages are justified based on the financial losses and emotional suffering endured due to unlawful termination, pay inequities, denial of reasonable accommodations, and retaliatory actions, which have had long-term impacts on her health and financial stability. The detailed breakdown of these damages is as follows:

**Financial Damages for Babanina James**

1. **Pain and Suffering: Estimate of $2,800,000** - Trauma caused by unlawful termination, defamation impacting employment opportunities, prolonged unemployment, and poor health outcomes leading to disability benefits from September 2021.
2. **Loss of Salary (7/29/2019 – to present): Estimate of $600,000** - 5 years due to wrongful termination.
3. **Retirement Fund Early Withdrawal: Estimate of $200,000** - Forced withdrawal of retirement funds due to financial need post-termination, including early withdrawal penalties, loss of interest, and no annual contributions for 5 years.
4. **Uncompensated Overtime (10/23/2018 - 7/29/2019): Estimate of $150,000** - 30-35 hours of uncompensated overtime per week for approximately 52 weeks, plus interest (1.5x regular rate).
5. **Pay Inequity among Managers with Less Tenure (2016-2019) + 5 years post termination and interest: Estimate of $50,000** - Managers with less tenure and same level in the division were paid more, estimated over 8 year.
6. **Denied Managerial Salary Increase and interest (2016-2019) + 5 post termination to present Estimate of $50,000** - (denied because of termination one week prior to back pay being administered).
7. **Interest on Unpaid Amounts: Estimate of $50,000** - Estimated interest on unpaid salary benefits over the 3 years on staff (Educational Credits towards advanced degree available to managers that I was unable to participate in as a result of schedule).
8. **Inequitable Pay between Babanina James and Steve Smyth (2016-2019) + Interest: Estimate of $45,000** - Steve Smyth, a subordinate, was paid more than Babanina James over 3 years,
9. **Litigation Costs: Estimate of $50,000 +** - Cost to litigate the case with MCAD, EEOC, and US District Court, including attorney fees.
10. **Unused Vacation Time: Estimate of $5,000** - 3 weeks of unused vacation at a weekly salary of $1,633.

(Page 12)

**Grand Total: $4,000,000**

**Additional Damages for Long-Term Disability and Medical Expenses**
1. **Punitive Damages: $3,400,000** - Punitive damages to penalize the employer for unlawful termination and deter future misconduct.
2. **Long-Term Disability and Medical Expenses: $1,500,000** - Compensation needed to cover medical costs, living expenses, housing (rent/mortgage), and inflation for the next 50 years due to worsened health outcomes, racial trauma, and harassment impacting mental health since 7/29/2019.
3. **Additional Compensations - Impact on Financial Obligations for Caregiving:** Financial impact of unmet obligations for caregiving responsibilities towards mother; **Damaged Employment**

**Revised Grand Total: $4,000,900**

**I want my position to be reinstated as the Director of the Child and Youth Violence Prevention Unit and remove unlawful termination on my employment record.**