UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BABANINA SHENELL JAMES, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. 24-11526-LTS |
| MASSACHUSETTS DEPARTMENT OF PUBLIC HEALTH, | ) | |
| Defendant. | ) | |

<u>ORDER ON PENDING MOTIONS (DOC. NOS. 92, 108, 112, 113, 114, 117)</u>

July 28, 2026

SOROKIN, J.

Before the Court are several pending motions. Massachusetts's Department of Public Health ("DPH") has asked the Court to dismiss the case (Doc. No. 92), and separately moved to compel discovery or impose a sanction of dismissal (Doc. No. 108). Babanina Shenell James, representing herself, belatedly sought an extension of time to respond to the latter motion (Doc. No. 112), and has filed three motions to seal various medical records (Doc. Nos. 113, 114, 117). As the Court will explain, DPH's requests for dismissal are ALLOWED, and James's various motions are DENIED.

I.    <u>BACKGROUND</u>

Though it has not advanced far in the litigation process, this Case has a long procedural history. The Court has recounted much of it in prior orders, <u>e.g.</u>, Doc. No. 101, and DPH describes some of it in the motions now pending. Here, the Court will summarize events pertinent to its resolution of the pending motions.

Delay in this case began at the outset.  After securing an extension of the service deadline for her original complaint, James waited until the extended deadline came before amending her pleading.  Doc. Nos. 15, 17.  After she served the amended complaint and the defendants moved to dismiss it in February 2025, James waited until the deadline for her opposition to that motion arrived before renewing a request for court-appointed counsel which the Court had previously denied.  Doc. No. 28.  She did not then oppose the defendants' motion or expressly seek an extension of her deadline for doing so.  Id.  She also did not include a certificate stating she had conferred with DPH's counsel prior to filing her motion for an extension, as required by this Court's Local Rule 7.1.[1]  Nevertheless, when the Court denied her request for counsel, it sua sponte extended her opposition deadline to April 2025 to provide her "time to explore her options."  Doc. No. 29.  In doing so, the Court gave her two months, instead of the customary two weeks, to oppose the defendants' motion.

Shortly before the extended deadline arrived, James sought a further extension, of another two months, again without certifying compliance with Local Rule 7.1.  Doc. No. 36.  When the Court allowed this request in part, it explained that James had already been afforded far longer to make this submission than parties ordinarily receive.  Doc. No. 38.  Considering her lack of counsel and her personal circumstances, however, the Court allowed her one more month, setting a new deadline of May 14, 2025, and noting it did "not anticipate further extensions in this deadline."  Id.

James filed nothing on May 14.  The following afternoon, she filed an emergency motion to extend her deadline by a week, citing family and medical challenges.  Doc. No. 39.  Though

---

[1] The defendants had included such a certificate, describing their attempts at conferral in connection with their motion to dismiss.  Doc. No. 27.

she again failed to certify compliance with Local Rule 7.1 and despite its previous admonition against further extensions, the Court allowed James's request. Doc. No. 40. Though James made a submission on May 21, 2025, she followed it with additional submissions explaining that her opposition memorandum was not yet complete and seeking still more time to finalize and file a complete version. Doc. Nos. 41, 42, 43, 44. Though three of these submissions advanced requests and were entitled "motions," none included certificates of conferral. Even so, the Court again afforded James lenience by allowing her another month to file a complete opposition to the motion to dismiss—in essence, providing her the full two-month extension she originally sought and giving her a total of four months to respond to the defendants' motion. Doc. No. 45. The Court also scheduled a motion hearing.

James filed her full opposition memorandum and various exhibits on June 21, 2025. Doc. No. 47. On July 8, the day of the motion hearing, James filed another opposition memorandum, more exhibits, and four other motions (all of which lacked certificates of conferral). Doc. Nos. 49, 50, 51, 52. On July 14, the Court allowed the defendants' motion to dismiss in part, eliminating all claims except for her Title VII claim against DPH. Doc. No. 54. Concurrently, the Court scheduled a Rule 16 conference for July 31, 2025, to be held via videoconference. Doc. No. 55.

Less than half an hour before that conference was set to begin, James filed a motion seeking to reschedule it due to personal and medical circumstances. Doc. No. 57. The motion said nothing about conferral, and DPH's scheduling statement filed shortly thereafter confirms that efforts by defense counsel to contact James had been unsuccessful. Doc. No. 58. The Court met with the parties at the scheduled time, explained to James the scheduling order it would ultimately issue after a Rule 16 conference, and granted her request to put such a conference off

until later, ultimately rescheduling it for August 25, 2025.  Doc. Nos. 59, 60.  In mid-August, James appealed the Court's ruling on DPH's motion to dismiss.  Doc. No. 64.

On the eve of the rescheduled Rule 16 conference, James proposed a discovery schedule under which her initial disclosures would be due January 31, 2026; written discovery requests would be made in March and May 2026; fact discovery would conclude July 31, 2026; expert discovery would continue through January 2027; and dispositive motions would be filed in March 2027.  Doc. No. 69.  Explaining why her proposed deadlines were each at least two or three months later than those proposed by DPH, James said she would "be unavailable" for two months (from November 10 to January 10) and "expect[ed] to retain counsel in mid-Nov[ember]."  Doc. No. 69-3 at 1.  James's scheduling proposal was accompanied by four motions, none of which contained a certificate of conferral.  Doc. Nos. 70, 71, 72, 73.

After the Rule 16 conference, the Court issued a scheduling order that governed only the first stage of discovery, intending to proceed step by step and meet with the parties along the way.  Doc. No. 75.  In its Scheduling Order, the Court adopted the dates proposed by DPH as follows: initial disclosures by October 15, 2025; requests for production and interrogatories by November 17, 2025; requests for admission by January 15, 2026; and fact discovery to conclude by April 30, 2026.  Id. at 1–2.

By October 15, James had made a pair of submissions to this Court related to her pending appeal—seeking transcripts at DPH's or the government's expense—one of which was a motion that contained no certificate of conferral.  Doc. No. 77; see also Doc. Nos. 76, 78.  She had not, however, made her initial disclosures.  By November 17, James's appeal had been dismissed (at least in part due to her failure to respond to a show-cause order issued by the First Circuit).  Doc. No. 82.  And, DPH had served its written discovery requests on James according to the

4

governing schedule.  See Doc. No. 108.  But James still had not made her initial disclosures nor served any of her own written discovery requests.  On November 18, a day after her discovery requests were due to be served and more than a month after her deadline for making initial disclosures, James made a trio of submissions that included a request for a monthlong extension of the deadline for written discovery and a motion to seal exhibits.  Doc. Nos. 83, 84; see also Doc. Nos. 85.  Neither motion included a certificate of conferral, and none of these submissions mentioned James's initial disclosures.  DPH opposed the motion for an extension a day later, not only taking issue with the length of the extension James sought but also pointing out James's failure to make initial disclosures.  Doc. No. 88.

After receiving the opposition and reviewing all of the submissions, the Court extended the written discovery deadline to December 10.  Doc. No. 89.  In the same November 19 Electronic Order, the Court directed James to certify, by December 2, that she had made all required initial disclosures.  Id.  It further warned James that "failure to comply with this Order may result in the dismissal of this action for disobeying an express Court order and/or failure to prosecute this action."  Id.  And the Court concluded the Electronic Order by reminding James of the conferral requirement imposed on all litigants by Local Rule 7.1 and noting that it "may deny future motions upon filing in the absence of a certificate of compliance" with that Local Rule. Id.  Unfortunately, these direct and unambiguous warnings did not trigger a change in James's approach to litigating this case.

James filed nothing on December 2.  Just after midnight, in the early morning hours of December 3, she filed a motion seeking leave to file her written discovery requests late.[2]  Doc.

---

[2] Under Local Rule 5.4(d), parties filing electronically, as James is in this case, must submit a document "prior to 6:00 p.m." on the day it is due for it "to be considered timely filed that day."

No. 90.  The extension she sought was modest—"48 hours (or whatever time the Court deems proper)," id. at 2—but it was unaccompanied by a certificate of conferral.  It also misidentified the item that was late.  James had not yet missed the written discovery deadline (December 10); she had missed the deadline for her initial disclosures (December 2).  In any event, despite the Court's clear admonishments, James failed to adhere to the very next deadline she faced, and then she belatedly sought an extension without complying with Local Rule 7.1.  For essentially these reasons, DPH opposed James's extension request later on December 3 and cross-moved to dismiss the case pursuant to Rule 41(b), citing her "repeated failures to comply with Court orders and rules, her decisions to place her chosen litigation actions above those that are required by the Court, and her failure to serve initial disclosures despite the Court's order informing her that she risked dismissal."  Doc. No. 92 at 5.

On December 4, 2025, the Court denied James's motion as moot, explaining that the deadline she identified had not yet passed.  Doc. No. 94.  It further directed her to respond to DPH's cross-motion to dismiss by December 17 and to show cause why the case should not be dismissed for her "failure to comply with the November 19, 2025 Order of the Court."  Id.  James made a timely responsive submission.  Doc. No. 95.  But it was accompanied by two motions that, again, lacked certificates of conferral.  Doc. Nos. 96, 97.  A few days later, James filed yet another motion without certifying conferral.  Doc. No. 99.

On December 18, 2025, the Court issued an Order denying James's most recent motions—as to two of them, the denial was without prejudice to refiling after conferral—and explaining that it would keep DPH's cross-motion to dismiss under advisement.  Doc. No. 101.  The Court did not mince words: "To date, the record establishes that James is refusing to participate in discovery or comply with the orders of the Court."  Id. at 4.  Though six months

had passed since the Rule 16 scheduling conference, James still had not made initial disclosures, despite the Court twice (sua sponte) extending the deadline for them and threatening dismissal if she persisted in failing to serve them. She also had not served written discovery requests, despite the Court once extending that deadline and subsequently reminding her of it when she sought a further extension before it had passed. Nor had she answered DPH's discovery requests, served a month earlier. Further, James had persisted in filing motions without conferring, despite the Court's admonishment about Local Rule 7.1. And notwithstanding the personal and medical issues that she cited as reasons supporting her requests for more time and explaining her failure to meet Court-ordered deadlines, James managed to file various motions and other papers and pursue an interlocutory appeal. This course of action suggested to the Court that, as DPH had argued, James prioritized her own preferred actions over those required by the applicable procedural rules and the orders of this Court.

Despite all this, the Court did not then dismiss the case. Instead, it gave James another chance to move the case forward, requiring her to make her long-overdue initial disclosures and notify the Court that she had done so by January 5, 2026. Doc. No. 101 at 4. To ensure James understood what would result from continued failure to participate in the ordinary litigation process, including discovery, the Court wrote that failure by James to comply with that deadline would justify "dismissing this action under Rule 41(b)," as DPH had requested. Id. at 4–5. This was another direct and unambiguous warning to James, but it also failed to deter her.

Instead of immediately serving the required disclosures (or responding to DPH's discovery requests, or serving her own written discovery requests), James filed two documents related to DPH's Rule 12 motion to dismiss—a motion no longer pending, because the Court had resolved it months earlier. See Doc. Nos. 103, 104. In other words, even with the Court's

warning and the possibility of dismissal looming, James did not promptly turn her attention to the matters at hand and do the things a plaintiff must do to move her case forward.

On December 30, 2025, James finally notified the Court that she had served her initial disclosures. Doc. No. 105. Because she acted before the last-chance deadline the Court had set, see Doc. No. 101 at 4–5, the Court extended James's written-discovery-request deadline to January 12 and ordered the parties to confer and propose by the same date any necessary adjustments to the remainder of the discovery schedule. Doc. No. 106. The Court also reminded James that DPH's request for Rule 41(b) dismissal remained under advisement. Id. But James did not fully comply with the Court's directives. The parties' January 12 submission made this plain. See Doc. No. 107. The record shows that this was not for lack of trying on DPH's part. See id. at 1–2; Doc. No. 109. James rejected DPH's proposed schedule adjustments—despite the fact that the proposal would have excused James's failure to timely respond to DPH's written discovery requests and provided her a generous extension. What is more, she supplied no counterproposal. See Doc. No. 107 at 3. Besides exhibiting disregard for the Court's directives, these actions by James necessitated further motion practice by DPH.

On January 12, 2026, with its Rule 41(b) dismissal request still pending, DHS moved to compel James's long-overdue discovery responses, seeking sanctions up to and including dismissal under Rule 37. Doc. No. 108; see Doc. No. 109 (certifying efforts by counsel to confer on two different days that were stymied when James "refused to talk" and "refused to discuss her late discovery responses" or DPH's motion). As the motion explains, DPH served James with requests for production of documents and interrogatories on November 17. Id. at 1. James's responses were due thirty days later. Fed. R. Civ. P. 33(b)(2), 34(b)(2). When DPH filed its motion, more than fifty days had elapsed, and James still had not responded. (During that fifty-

8

plus-day span, while she was not responding to the discovery requests, the docket reflects that James filed at least a dozen other documents in this case.)  The Court ordered James to respond to DPH's motion by January 20, reminding her yet again "of her obligation to participate in the discovery process," and that "failure or refusal to do so" could lead to dismissal.  Doc. No. 110.

On January 14, James filed a status report indicating that she had served written discovery requests on DPH two days earlier.  Doc. No. 111 at 1.  She acknowledged that she still had not responded to DPH's requests, explaining that she received them "during a period in which [she] sought medical accommodations" and implying that she did not consider herself obligated to respond to DPH's requests before she had served her own and in the absence of a Court order setting a response deadline.  Doc. No. 111 at 2; cf. Doc. No. 106 ("The Court plans to 'establish a new schedule to govern any discovery DPH seeks.'").  But the governing Rules of Civil Procedure set discovery-response deadlines that do not hinge on the order in which parties serve their requests, nor do they suggest parties are free to disregard requests until a Court orders them to act.  See Fed. R. Civ. P. 33(b)(2), 34(b)(2).

Of course, the Court had set a deadline for James's opposition to DPH's motion to compel—which conveyed a second request for dismissal, with one already under advisement. But that deadline (January 20) came and went without a responsive filing by James.  Apparently, James did provide to DPH's counsel a two-page document on January 20 that she characterized as her response to DPH's discovery requests.  Doc. No. 116-1 ¶ 9; id. at 4–5.  The Court has reviewed that document alongside DPH's requests, Doc. Nos. 108-1, -2, and finds it does not amount to a reasonable or good-faith response that would suffice under the governing rules.  In any event, serving it did not relieve James of her obligation to respond to the motion so that the Court could resolve it.  And the record shows, via her next filing, that James understood that.

9

On the afternoon of January 21, James filed an "emergency motion" seeking a forty-five-day extension to respond to the motion to compel. Doc. No. 112. (This submission did not advance a claim that the motion to compel was moot, because James had already responded to the discovery requests.) Along with her tardy request, James filed two motions to seal medical records—both of which lack certificates of conferral—and the medical records themselves (which the Clerk docketed provisionally under seal). Doc. Nos. 113, 114, 115. DPH promptly opposed the extension request. Doc. No. 116. Three weeks later, on February 13, James filed two more motions, one seeking an "emergency" three-month stay of the proceedings and another seeking to submit more medical records (which were, again, docketed provisionally under seal). Doc. Nos. 117, 118. Neither of these motions included certificates of conferral, which the Court noted in denying (without prejudice) James's motion for a stay. Doc. No. 120.

James has made no further filings since that time. She has not reiterated her request for a stay (in a submission curing the conferral defect). Though the date she proposed as an extended deadline has now passed, she still has not opposed DPH's motion to compel. The Court stayed DPH's discovery obligations (but not James's) and cancelled the previously scheduled status conference pending resolution of the motions addressed herein. Doc. Nos. 123, 124.

In all, James has filed more than two dozen motions without conferring—and without certifying conferral—as required by Local Rule 7.1. By the Court's count, she has filed eight such motions after the Court expressly warned her in writing about the need to adhere to that rule and the potential consequences of failing to do so. She has failed to comply with at least half a dozen Court-imposed deadlines, including: opposing the original defendants' motion to dismiss; serving initial disclosures; serving her written discovery requests; responding to DPH's discovery requests; conferring with DPH to propose a post-disclosure discovery schedule; and

opposing DPH's motion to compel.  All this, despite multiple clear explanations and warnings from the Court about her obligations.  Against this backdrop, the Court turns to the motions.

## II.    LEGAL STANDARD

In its pending motions, DPH invokes Rules 37 and 41(b).  Doc. Nos. 92, 108.  DPH asks the Court to dismiss based on James's "numerous failures to comply with the Rules of Civil Procedure and Court orders."  Doc. No. 108 at 1.

Rule 41(b) states "[i]f the plaintiff fails to prosecute or comply with these rules, a defendant may move to dismiss the action."  Fed. R. Civ. P. 41(b).  Trial judges are afforded wide latitude "in order to operate effectively and administer justice properly."  Vasquez-Rijos v. Anhang, 654 F.3d 122, 127 (1st Cir. 2011).  This latitude includes all sanctions, including the most severe—dismissal.  See Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003) ("The sanction of dismissal is an important part of the armamentarium that the law makes available to trial courts.").  Trial courts should "consider from the broad universe of available sanctions in an effort to fit the punishment to the severity and circumstances of the violation."  Id.  In other words, dismissal should be reserved only for instances when no other "lesser sanctions . . . would truly be appropriate."  Zavala Santiago v. Gonzalez Rivera, 553 F.2d 710, 712 (1st Cir. 1977); see Enlace Mercantil Internacional, Inc. v. Senior Indus., Inc., 848 F.2d 315, 317 (1st Cir. 1988) (discussing two limitations on dismissal—extremity of violations and futility of lesser sanctions).

There is, of course, a preference among both district and appellate courts for "adjudications [to] be driven by the merits of a case rather than the [parties'] neglect." McKeague v. One World Techs., 858 F.3d 703, 707 (1st Cir. 2017); see Richman v. Gen. Motors Corp., 437 F.2d 196, 199 (1st Cir. 1971) ("The power of the court to prevent undue delays must be weighed against the policy of the law favoring disposition on the merits.").  However, this

predilection for the merits will give way in the face of substantial and continued disregard for the governing rules.  See McKeague, 858 F.3d at 707.

Circumstances deemed appropriate for dismissal arise "only when a plaintiff's misconduct is extreme."  Young, 330 F.3d at 81; see Enlace Mercantil Internacional, Inc., 848 F.2d at 317.  While no true factor-based test has been adopted in the First Circuit, relevant precedent identifies important considerations district judges often consider in weighing the extremity of a plaintiff's conduct:

> Among those commonly mentioned (this list is not complete) are the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness vel non of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions . . . . There is also a procedural dimension.

Benitez-Garcia v. Gonzalez-Vega, 468 F.3d 1, 5 (1st Cir. 2006) (quoting Robson v. Hallenbeck, 81 F.3d 1, 2–3 (1st Cir. 1996)).

A plaintiff always bears the burden of moving their case forward.  To prevent congestion, courts must "clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief."  Link v. Wabash R.R. Co., 370 U.S. 626, 630 (1962).  And "while courts have historically loosened the reins for pro se parties, the right of self-representation is not a license not to comply with relevant rules of procedural and substantive law."  Eagle Eye Fishing Corp. v. U.S. Dep't of Com., 20 F.3d 503, 507 (1st Cir. 1994) (cleaned up); see also Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998) ("[L]itigants have an unflagging duty to comply with clearly communicated case-management orders, and this duty extends even to litigants who proceed pro se." (citing McNeil v. United States, 508 U.S. 106, 113 (1980))).  "The Constitution does not require judges . . . to take up the slack when a party elects to represent himself."  Eagle Eye, 20 F.3d at 507.

12

III.    <u>DISCUSSION</u>

Application of the foregoing principles leads the Court to conclude that this is a case in which dismissal is warranted.  By continuously failing to comply with court orders, meet court- and rule-imposed deadlines, participate in discovery, or take steps to move her case forward, James has left the Court with little choice but to dismiss.

Despite this Court's warnings and the threat of dismissal posed by DPH's motions, James has continued to exhibit indifference for the procedural rules that govern federal litigation and disinterest in complying with this Court's orders.  "[T]he disregard of court orders qualifies as extreme," as does "extremely protracted inaction (measured in years)[,] . . . ignorance of warnings, [and] contumacious conduct."  <u>Malot v. Dorado Beach Cottages Assocs.</u>, 478 F.3d 40, 44 (1st Cir. 2007); <u>Vasquez-Rijos</u>, 654 F.3d at 127 (quoting <u>Cosme Nieves v. Deshler</u>, 826 F.2d 1, 2 (1st Cir. 1987)).  Here, James has repeatedly failed to meet court-ordered deadlines and to follow the Rules of Civil Procedure and this Court's Local Rules.  Relentlessly, James has filed motions without conferral (and, it seems, affirmatively refused to confer with DPH's counsel), missed deadlines set by the Court, and prioritized her own desired filings over those this Court requires.

DPH highlights James's "ability to perform work that she wants to perform, while at the same time, not complying with the Court's orders" as evidence of her deliberate flouting of rules.  Doc. No. 116 at 7–8.  This is a strong argument, supported by the record.  James's medical and personal issues are no doubt serious.  However, since this Court's December 18 order, James has managed to prepare and file nine documents, none of which propose a discovery schedule or respond to the pending motion to compel.  She has also managed to prepare and serve twenty- one interrogatories, ninety requests for production, and forty-four requests for admissions, yet provided to DPH only a facially deficient response to its long-pending discovery requests.  Doc.

13

No. 116.  In essence, James has treated discovery as a one-sided endeavor in which she participates at her whim.  Though she has requested many extensions and accommodations, she has done next to nothing to move her case forward.

Even now, six months after DPH filed a dispositive motion seeking case-ending sanctions, she has filed no opposition nor otherwise articulated any meaningful challenge to DPH's request for sanctions up to and including dismissal.  This is emblematic of James's approach to this case.  Indeed, the remaining claim against DPH has survived this long only through the Court's indulgence of James, due to her self-represented status and her medical and personal challenges, in granting numerous extensions and excusing her noncompliance time and again.  But that indulgence has a limit—a reality of which this Court has warned James more than once.  Doc. Nos. 89, 94, 101, 110; cf. Lopez-Gonzalez v. Mun. of Comerio, 404 F.3d 548, 550 (1st Cir. 2005) ("The Court must make it clear that it is not a parking lot for stagnant cases.").

Continuing to permit James to prolong this case through unilateral deadline changes will prejudice DPH.  "[C]hanging the rules mid-course to benefit someone who flouted them creates subtle and even substantial risks of unfairness.  Such changes increase uncertainty, introduce delay, raise costs, and invite further violations by others."  McKeague, 858 F.3d at 707.  DPH has followed court orders and deadlines, timely served discovery, and even attempted to negotiate with James a new discovery schedule that would forgive her ongoing response failures.  In these circumstances, the Court finds DPH has not contributed to the lethargic pace at which this action has progressed.  Cf. Malot, 478 F.3d at 45 (noting plaintiff suffered prejudice too where both sides contributed to delay).  James's dilatory approach to this case has also hindered "the operations of the court."  Benitez-Garcia, 468 F.3d at 5; see Damiani v. R.I. Hosp., 704 F.2d

12, 16 (1st Cir. 1983) (admonishing that parties are not entitled to "the luxury of conducting lawsuits in a manner and at a pace that best suits their convenience"); see also Fed. R. Civ. P. 1 ([The Rules] should be . . . administered by the court and the parties to secure the just, speedy, and inexpensive determination of every action." (emphasis added)).

The Court is cognizant of the difficulties James has experienced, including challenges arising during the pendency of this action. See, e.g., Doc. No. 57. But her circumstances do not give her license to delay this action indefinitely.[3] As noted already, the record shows that she has managed to prepare and submit filings when she has seen fit to do so. This includes instances in which she missed Court-imposed deadlines without requesting extensions but managed to make other unrelated filings around the same time. See, e.g., Doc. Nos. 110, 112, 113, 114, 115. This pattern, which has continued despite increasingly stringent warnings from the Court, establishes James's unwillingness to comply with rules and timely prosecute this case.

James has "had notice of the possible dismissal, as well as an opportunity to respond." United States ex rel. Nargol v. DePuy Orthopaedics, Inc., 69 F.4th 1, 16 (1st Cir. 2023). This "weigh[s] in favor of imposing dismissal where the 'disregard of a prior warning from the court exacerbates the offense.'" Vallejo v. Santini-Padilla, 607 F.3d 1, 9 (1st Cir. 2010) (quoting Robson, 81 F.3d at 3). Nearly one year ago, the Court detailed in simple terms the requirements of the discovery process and how this litigation would proceed during a scheduling conference James attended via videoconference. Doc. No. 74; see Doc. No. 92 at 4. The Court did this to ensure that James understood what was expected of her and appreciated the consequences that might flow from failing to follow the discovery schedule the Court set that day. Doc. No. 75.

---

[3] It bears noting that this case concerns events that occurred in 2019. By waiting five years to sue in the first place, James forfeited most of her claims pursuant to statutes of limitations that had run before she filed suit. See Doc. No. 54.

Though the Court addressed initial disclosures during that conversation, James failed to timely provide hers thereafter. But the Court did not then dismiss the case or sanction her.

Then, on November 19, the Court noted James's failure to make disclosures or comply with Local Rule 7.1 and admonished that both failures could have serious consequences, including dismissal. Doc. No. 89. Even though James did not comply with that order—she neither made her disclosures by the new deadline it set, nor timely served her written discovery requests, nor ceased filing motions without conferring—the Court again refrained from dismissing the case or sanctioning her.

Other similar written and explicit warnings from the Court ensued. See Doc. Nos. 94, 101, 110. By taking DPH's first motion to dismiss under advisement, the Court provided still more notice that dismissal was a possibility. See Nargol, 69 F.4th at 15. When "a noncompliant litigant has been suitably forewarned . . . a trial judge need not first exhaust milder sanctions" before dismissing. HMG Prop. Invs., Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 918 (1st Cir. 1988). Indeed, the Court has already imposed some lesser sanctions—warnings to James and denial of multiple motions for her failure to adhere to Local Rule 7.1—to no avail.[4]

All of the foregoing leads the Court to conclude that dismissal under Rule 41(b) is warranted here. Dismissal is also appropriate under Rule 37(b) as a sanction for James's repeated discovery failures. The Court finds that James's continued failures to comply with deadlines, Court orders, and procedural rules encompassed violations of the discovery process, demonstrated disobedience of orders of this Court, and illustrated a failure to prosecute this case. Accordingly, each of the Rules DPH invokes separately supplies a basis for dismissal in the

---

[4] Other lesser sanctions, such as requiring James to pay DPH's attorney fees, are generally inappropriate where a self-represented litigant proceeding in forma pauperis is involved.

circumstances presented, and the Court rests its decision on both Rules.  Because the action is being dismissed, James's other pending motions are moot.

## IV.    <u>CONCLUSION</u>

The defendant's motions to dismiss (Doc. Nos. 92 and 108) are ALLOWED.  James's motion for extension (Doc. No. 112) is DENIED AS MOOT and, alternatively, DENIED for failure to confer.  And James's motions to seal medical records (Doc. Nos. 113, 114, and 117) are DENIED for failure to confer, though the exhibits she proffered along with the motions will remain sealed on the docket.  A separate judgment of dismissal will issue, and the Clerk shall close this case.  All parties shall bear their own fees and costs.

SO ORDERED.


 /s/ Leo T. Sorokin
United States District Judge

17